UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LONDELL JENKINS,

                Petitioner,                Case Number 12-11458
                                                Honorable Marianne O. Battani

v.

WILLIE SMITH,

                Respondent.
_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND (3) DENYING PERMISSION TO PROCEED IN FORMA PAUPERIS ON APPEAL**

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner was convicted in the Wayne Circuit Court of felon in possession of a firearm, carrying a concealed weapon (CCW), and possession of firearm during the commission of a felony. The trial court sentenced him to 3½-to-15 years for the felon in possession and CCW convictions, and a consecutive five-year term for the felony-firearm conviction. The petition raises four claims: (1) the trial court erroneously admitted into evidence a ski mask found in Petitioner's car; (2) the prosecutor offered perjured testimony; (3) trial counsel was ineffective; and (4) Petitioner's sentences for both felon in possession and felony-firearm violates double jeopardy. The petition will be denied because none of his claims have merit.  The Court will also deny Petitioner a certificate of appealability and permission to proceed in forma pauperis on appeal.

I. Background

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). See Wagner v. Smith, 581 F.3d 410, 413 (6th Cir. 2009):

> The prosecution presented testimony that Jenkins was driving a vehicle in Detroit and that police observed that he was not wearing a seatbelt. After a police semi-marked vehicle made a U-turn and began following Jenkins' vehicle, Jenkins quickly turned onto a residential street, pulled near the curb, and fled from his vehicle. Detroit Police Officer William Zeolla, one of four officers in the patrol car, observed Jenkins carrying a dark handgun. The officers pursued but lost sight of Jenkins for approximately 20 minutes. Jenkins was eventually located hiding under a residential deck. Officer Robert Skender, who had joined the other four officers in the search, recovered a handgun from an alley behind the residence. Officer Skender also confiscated a black ski mask from the front seat of Jenkins' vehicle. Jenkins voluntarily stated to Officer Jason Kile that he had the gun because he thought someone was going to rob him. Jenkins later gave a written statement in which he denied carrying a handgun. The defense theory at trial was that Jenkins never possessed a firearm, and that the testimony of Officers Zeolla and Skender was not credible.

People v. Jenkins, No. 293668, 2010 WL 4493514, at *1, (Mich. Ct. App. Nov. 9, 2010).

Following his conviction and sentence, Petitioner filed a claim of appeal in the Michigan Court of Appeals. His appellate counsel filed a brief raising the following claims:

> I. The trial court reversibly erred in granting the People's motion to admit evidence of a ski mask in Appellant's vehicle, as the prosecution could not lay a sufficient foundation to prove that the item had any connection to the charged offense.
>
> II. The trial court pierced the veil of impartiality, usurped the role of the prosecutor, and denied Appellant an impartial jury and a fair trial by justifying the prosecution's failure to present squad car video evidence.
>
> III. Appellant's consecutive sentencing for both felon in possession of a firearm and felony firearm constitute multiple punishments for the same offense, in violation of state and federal double jeopardy protections.
>
> IV. Appellant's sentence for carrying a concealed weapon cannot be

2

consecutive to his felony firearm sentence.

Petitioner also filed a pro se brief in which he raised the following claims:

I. The trial court invaded the jury's province to determine whether the City of Detroit was located in the Count of Wayne.

II. The prosecution failed to prove venue of the offenses beyond a reasonable doubt, because the evidence merely showed that the crime occurred in the City of Detroit at Warren and Abington.

III. Defendant-Appellant was denied a fair trial where the prosecutor committed misconduct when they knowingly used false and perjured testimony to secure a conviction that denied Defenda-Appellant a fair trial.

The Michigan Court of Appeals affirmed Petitioner's conviction in an unpublished opinion. People v. Jenkins, 2010 WL 4493514, at *6, (Mich. Ct. App. Nov. 9, 2010).

Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court which raised the following claims:

I. The trial court reversibly erred in granting the People's motion to admit evidence of a ski mask.

II. The trial court pierced the veil of impartiality, usurped the role of the prosecutor, and denied Appellant an impartial jury and fair trial by justifying the prosecution's failure to present squad car video evidence.

III. Appellant's consecutive sentencing for both felon in possession of firearm and felony firearm constitute multiple punishment for both same offense, in violation of state and federal double jeopardy protections.

The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed by the Court. People v. Jenkins, 795 N.W. 2d 23 (Mich. Mar. 29, 2011) (table).

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." Id. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" Renico v. Lett, 130 S. Ct. 1855, 1862 (2010)((quoting Lindh v. Murphy, 521 U.S. 320, 333, n. 7 (1997); Woodford v. Viscotti, 537 U.S. 19, 24 (2002)(per curiam)). "[A] state court's determination that a claim lacks merit

4

precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 131 S. Ct. 770, 786 (2011)(citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. Id.

"[I]f this standard is difficult to meet, that is because it was meant to be." Harrington, 131 S. Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. Id. Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Id. (citing Jackson v. Virginia, 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." Woodford, 537 U.S. at 24. Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for

5

fairminded disagreement." Harrington, 131 S. Ct. at 786-87.

### III. Discussion

A. Admission of the Ski Cap

Petitioner first claims that the trial court erred when it allowed the prosecutor to present evidence that a black ski cap was recovered from Petitioner's vehicle. Petitioner asserts that the prosecutor failed to show any relevant connection between the ski cap and the crime, and that its admission tended to unfairly suggest that Petitioner was engaged in other criminal activity.

"'[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.'" Ege v. Yukins, 485 F.3d 364, 375 (6th Cir.2007) (quoting Estelle v. McGuire, 502 U.S. 62, 68 (1991)). The standard of review is therefore "very deferential" on claims regarding the admission of evidence in state court. Hudson v. Lafler, 421 F. App'x 619, 627 (6th Cir. 2011). An evidentiary ruling may violate due process only where it "is so egregious that it results in a denial of fundamental fairness." Bugh v. Mitchell, 329 F.3d 496, 512 (6th Cir. 2003). Whether an error in the admission of evidence "constitutes a denial of fundamental fairness turns upon whether the evidence is material in the sense of a crucial, critical[,] highly significant factor." Brown v. O'Dea, 227 F.3d 642, 645 (6th Cir. 2000).

The prosecutor suggested that Petitioner left the ski mask on the front seat of the car to dissociate himself from it because it was late March when the incident occurred, and it was not cold enough to don a ski mask except for nefarious purposes. The Michigan Court of Appeals was persuaded by this argument and determined that the ski cap was

properly admitted under Michigan Rules of Evidence 401 and 403 because "the evidence that there was a ski mask in the front seat of the vehicle from which Jenkins fled made it more probable that Jenkins possessed a weapon as he fled from the vehicle." Jenkins, 2010 WL 4493514, at *3.

This Court will not comment on the persuasiveness of the prosecutor's argument. The Court's only function in this action is to determine whether the "challenged state-court ruling rested on an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Metrish v. Lancaster, 133 S. Ct. 1781, *5 (2013) (quoting Harrington,131 S.Ct. at 786). The result reached by the state appellate courts, at a minimum, allows for fairminded disagreement whether the admission of the ski cap was so egregious that it resulted in a denial of fundamental fairness. An argument can be made–barely–that the existence of an out-of-season ski mask in the front seat of a car makes it more likely than not that Petitioner possessed a handgun when he fled his car. An argument can also be made that the tendency of this evidence to cause unfair prejudice to Petitioner was essentially equivalent to its relevance–that is, it had very little. Certainly, there could be fairminded disagreement about whether the ski cap was a "crucial, critical, highly significant factor" at Petitioner trial. Brown, 227 F.3d at 645. Officers testified that they observed Petitioner holding a handgun when he fled from the vehicle. A handgun was found near the location Petitioner was found hiding. Finally, Petitioner admitted to police that he had a handgun because he was afraid of being robbed. Therefore, Petitioner has not demonstrated entitlement to habeas relief based on this claim.

B. Presentation of Perjured Testimony

Petitioner's next claims that the prosecutor knowingly used perjured testimony when he presented contradictory testimony from the police officers.

Before habeas corpus relief becomes available for prosecutorial misconduct, such misconduct must be so egregious as to deny Petitioner a fundamentally fair trial. Donnelly v. DeChristoforo, 416 U.S. 637, 643–45 (1974). "[I]n order to establish a claim of prosecutorial misconduct ... [based upon perjured testimony], the defendant must show that the statement in question was false, that the prosecution knew it was false, and that it was material." Byrd v. Collins, 209 F.3d 486, 517 (6th Cir.2000). The defendant must show that the statement in question was indisputably false rather than merely misleading. Id. With respect to materiality, because the use of perjured testimony is fundamentally unfair, a conviction must be set aside "if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." Id., quoting Kyles v. Whitley, 514 U.S. 419, 433 at fn. 7 (1995).

The Michigan Court of Appeals rejected Petitioner's claim as follows:

> Jenkins next argues that the prosecutor knowingly used the perjured testimony of Officers Zeolla and Skender to secure his conviction. We review this unpreserved claim for plain error affecting Jenkins' substantial rights. Carines, 460 Mich. at 763-764.
>
> A prosecutor has a constitutional duty to inform the trial court and a criminal defendant when a government witness offers perjured testimony. People v. Lester, 232 Mich. App. 262, 276-277 (1998). A prosecutor may not knowingly use false testimony to obtain a conviction and must correct false evidence when it is presented. Id. at 277. But absent proof that the prosecutor knew that trial testimony was false, reversal is unwarranted. People v. Herndon, 246 Mich. App. 371, 417-418 (2001).
>
> Jenkins argues that the prosecutor knowingly used Officer Zeolla's perjured testimony that he saw Jenkins carrying a gun as he fled from the

> vehicle. Jenkins argues that Officer Zeolla's testimony had to be perjury because Officer Kile, who was the driver of the patrol vehicle and had a better view of Jenkins, testified that he did not see Jenkins with a handgun. Mere proof of conflicting testimony is insufficient to support a claim of perjury People v. Kozyra, 219 Mich.App. 422, 429 (1996), and the fact that certain testimony may be contradicted by other witnesses does not compel the prosecutor to disbelieve his own witness and correct his testimony. Lester, 232 Mich. App. at 278-279. The mere fact that Officer Kile testified that he did not see Jenkins with a gun does not establish that Officer Zeolla's testimony was false, let alone that the prosecutor knew it to be false. Jenkins' argument is a matter of witness credibility, which was for the jury to resolve. The jury was informed of the different observations of each officer, the position of each officer in the patrol car, and the ability of each officer to observe Jenkins from his vantage point.
>
> Jenkins further claims that the prosecutor knowingly used the perjured testimony of Officer Skender, who testified that he recovered a handgun from an alley. Jenkins argues that this testimony was false because a defense witness testified that there was no alley where the gun was supposedly found. But the mere fact that there was contradictory testimony does not support a claim of perjury.
>
> Jenkins also argues that at the preliminary examination, Officer Zeolla offered perjured testimony when he testified that the firearm recovered was "identical" to the one he saw in Jenkins' hand, but he could not say for certain that it was the same gun. Jenkins has not explained why this testimony should be considered false, and we can discern no indication of perjury from the record. Because there is no indication that the prosecutor engaged in any misconduct, Jenkins has failed to demonstrate plain error.

Jenkins, 2010 WL 4493514, at *7-8.

This decision reasonably applied clearly established Supreme Court law. There was nothing inconsistent about the officers' testimony. That fact that one officer saw a gun and another did not does not mean that the prosecutor knew the testimony to be false. Rather, it meant that the police officers had different observations. In any event, mere inconsistencies in the testimony of witnesses does not establish the knowing use of perjured testimony by the prosecutor. Coe v. Bell, 161 F.3d 320, 343 (6th Cir. 1998). Furthermore, Petitioner has not demonstrated that the testimony that the handgun was

9

found in an alley was perjured. The testimony of a single defense witness that there was no alley in what he believed was the location described by the officer falls far short of proving that the testimony was indisputably false. Lastly, there is nothing inconsistent, let alone false, about an officer testifying that the weapon presented at trial looks identical to the one he saw but could not be sure if it was, in fact, the same weapon. Petitioner has therefore not demonstrated entitlement to habeas relief on this claim.

C. Ineffective Assistance of Counsel

Petitioner asserts that his trial counsel was ineffective because he only impeached the police officers' testimony with reference to their police reports and did not use their preliminary examination testimony. He also argues that counsel failed to adequately object to admission of the ski mask and failed to object to the prosecutor's misconduct.

In Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687. Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. Id.

As to the performance prong, Petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. Strickland, 466 U.S. at 690. The reviewing court's scrutiny of counsel's performance is

10

highly deferential. Id. at 689. Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Id. at 690. Petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy. Id. at 689.

To satisfy the prejudice prong under Strickland, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. Id. "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." Id. at 686.

The Supreme Court has confirmed that a federal court's consideration of ineffective-assistance-of-counsel claims arising from state-criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state-appellate courts reviewing their performance. "The standards created by Strickland and [section] 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." Harrington, 131 S.Ct. at 788 (internal and end citations omitted). "When [section] 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard. Id.

Here, the Michigan Court of Appeals denied relief with respect to Petitioner ineffective assistance of counsel claim as follows:

> Jenkins lastly argues that he was denied the effective assistance of

> counsel at trial because defense counsel was not prepared to try the case, as shown by his inaction on certain matters. Because Jenkins did not raise this issue in the trial court our review is limited to mistakes apparent on the record. People v. Ginther, 390 Mich. 436, 443 (1973); People v. Sabin, 242 Mich. App. 656, 658-659 (2000).
>
> "A defendant is entitled to have his counsel prepare, investigate, and present all substantial defenses." People v. Kelly, 186 Mich. App. 524, 526 (1990). When claiming ineffective assistance due to defense counsel's unpreparedness, a defendant must show prejudice resulting from the lack of preparation. People v. Caballero, 184 Mich. App. 636, 640, 642 (1990). Contrary to Jenkins' argument that his counsel was not adequately prepared to challenge the ski mask, defense counsel objected to this evidence on relevancy grounds. Jenkins claims that it would have been more proper to object under Mich. Rule Evid. 404(b), but because evidence of a ski mask, standing alone, is not evidence of "other crimes, wrongs, or acts," any objection on the basis of Rule 404(b) would have been futile. Defense counsel also questioned Officers Zeolla and Kile about their respective locations and vantage points when Jenkins fled from his vehicle, and presented a defense witness who contradicted Officer Skender's testimony about where the gun was recovered. To the extent that Jenkins relies on the fact that defense counsel's strategy was not successful, nothing in the record suggests that his attorney's actions were unreasonable or prejudicial. This Court will not second-guess counsel with respect to matters of strategy, such as decisions about what questions to ask and what evidence to present, and the fact that a chosen strategy does not work does not constitute ineffective assistance of counsel. People v. Rockey, 237 Mich. App. 74, 76 (1999); People v. Stewart, 219 Mich. App. 38, 42 (1996). The record also fails to support Jenkins' claim that Officers Zeolla and Skender offered perjured testimony, and Jenkins has not demonstrated that additional investigation would have shown a different result. Defense counsel's questions, remarks, and arguments throughout trial demonstrate that he was familiar with the case and prepared for trial and the record does not support Jenkins' assertion that defense counsel was unprepared to try the case.

Jenkins, 2010 WL 4493514, at *8.

This assessment of Petitioner's claim was not objectively unreasonable. The Court's review of the trial record shows that defense counsel was adequately prepared for trial and effectively presented Petitioner's defense that the officers were mistaken or lying about seeing Petitioner in possession of a firearm. Counsel did this by cross-examining the

officers about perceived inconsistencies in their testimony and statements they wrote in the police reports. Counsel also presented a defense witness who testified that the officer could not have recovered the firearm where he said he did. Petitioner refers to inconsistent testimony at the preliminary examination by the officers that should have been used by defense counsel. But the test is not whether counsel did everything he could have done; it is whether the assistance that was rendered was professionally adequate. Given the doubly-deferential standard of ineffective assistance of counsel claims reviewed under § 2254, Petitioner has failed to demonstrate entitlement to relief with respect to this claim.

D. Double Jeopardy

Petitioner contends that his sentences for both felony-firearm and felon in possession of a firearm violate the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution because his sentences for both convictions constitute multiple punishments for the same offense.

The test for the multiple-punishment aspect of the Double Jeopardy Clause focuses on legislative intent. This is because "legislatures, not courts, prescribe the scope of punishments." Missouri v. Hunter, 459 U.S. 359, 368 (1983). The Fifth Amendment is a check against the judiciary — it prohibits courts from imposing sentences exceeding "the limits prescribed by the legislative branch of government, in which lies the substantive power to define crimes and prescribe punishments." Jones v. Thomas, 491 U.S. 376, 381 (1989) (citing Ohio v. Johnson, 467 U.S. 493, 499 (1984)).

When a state statute is at issue, as in this case, the state supreme court's interpretation of the statute controls. Missouri v. Hunter, 459 U.S. 359, 368 (1983) ("[T]he

Missouri Supreme Court has recognized that the legislature intended that punishment for violations of the statutes be cumulative. We are bound to accept the Missouri court's construction of that State's statutes." In People v. Calloway, 671 N.W.2d 733, 735 (Mich. 2003), the Michigan Supreme Court determined that the state legislature intended cumulative punishments for felon in possession of a firearm and felony firearm. This Court is obligated to follow that determination. Petitioner's double jeopardy challenge therefore lacks merit.

## IV. Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473 (2000). The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. The Court will also deny Petitioner permission to proceed on appeal in forma pauperis because any appeal of this decision would be frivolous.

V. Conclusion

Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus. The Court further **DENIES** a certificate of appealability and permission to proceed on appeal in forma pauperis.

**SO ORDERED.**

s/Marianne O. Battani
Honorable Marianne O. Battani
United States District Judge

Dated: June 5, 2013

CERTIFICATE OF SERVICE

I hereby certify that on the above date a copy of this Order was served upon the Petitioner via ordinary U.S. Mail and Counsel for the Respondent, electronically.

s/Bernadette M. Thebolt
Case Manager